227 So.2d 313 (1969)
Arthur William ECKROTH, Appellant,
v.
STATE of Florida, Appellee.
No. 68-523.
District Court of Appeal of Florida. Second District.
October 3, 1969.
Rehearing Denied November 13, 1969.
Barry M. Salzman, of Law Offices of Alex D. Finch, Clearwater, for appellant.
Earl Faircloth, Atty. Gen., Tallahassee, and Michael Kavouklis, Asst. Atty. Gen., Lakeland, for appellee.
HOBSON, Chief Judge.
Defendant-appellant, Arthur William Eckroth, appeals a judgment and sentence entered pursuant to a jury verdict finding him guilty of a violation of the narcotics law.
The information charged defendant and five others with unlawfully possessing and having in their control a certain narcotic drug, to-wit: cannabis sativa, commonly known as marijuana. The question determinative of this appeal is whether the facts as they concerned defendant Eckroth support his conviction on the charge of "possession or control" of marijuana.
A review of the testimony of the case sub judice, insofar as the same relates to the activities and conduct of the defendant, establishes that the defendant met codefendants Homer and Marshall at about 9:00 P.M. on March 9, 1968; that the defendant accompanied Homer and Marshall to the Beaux Arts Theatre where all three stayed until about 11:00 P.M.; that all three thereafter stopped at a diner on Madeira Beach, Florida for something to eat; that during this time none of the three had been smoking marijuana; that between 1:30 A.M. and 2:00 A.M. on March 10, 1968, the defendant along with Homer and Marshall entered the home of *314 Belle Mathews, another codefendant; that while in Belle Mathews' home, the defendant was seated in a circle with others who were using marijuana; that while seated in this circle Marshall filled a pipe which he owned with marijuana and passed it around the circle so that each person sitting in the circle (including the defendant) might take a drag or puff from the pipe; that shortly thereafter the defendant and Belle Mathews left the house and entered a parked car; that when the undercover agent who was present at the Mathews' home left at 3:15 A.M., the defendant and Belle Mathews were still in the car; that the defendant was back in the house at 4:15 A.M. when a raid took place and he was arrested; and that upon defendant's arrest, he had no marijuana in his possession though he appeared to be "drunk or high."
This court must assume that the jury believed the credible testimony most damaging to the defendant and drew from the facts established those reasonable conclusions most unfavorable to him. Parrish v. State, Fla.App. 1957, 97 So.2d 356, and Spataro v. State, Fla.App. 1965, 179 So.2d 873.
From the testimony alluded to above, the only evidence the jury had before it to find defendant Eckroth guilty of "possession or control" of marijuana was the fact that he sat in the circle and took a drag or puff from another person's pipe which was filled with marijuana. It now becomes our duty to determine whether this evidence is sufficient in law to support a finding of "possession or control" on the part of defendant Eckroth.
Our research has failed to disclose any Florida case deciding the precise question we have before us on the facts of this case. Several cases are cited by the parties in their briefs. Among them are: Reynolds v. State, 92 Fla. 1038, 111 So. 285 (1927); Spataro v. State, supra; Frank v. State, Fla.App. 1967, 199 So.2d 117. These cases were decided on other grounds or are not applicable here as it was not shown that the defendant in the instant case owned the home wherein the marijuana was being used nor was it shown that he resided in the home. In addition, it was not shown that defendant owned the pipe which was passed around the circle, nor that the marijuana in the bowl of the pipe belonged to him. The precise question before us is whether a person (the defendant) who receives from another, a pipe of marijuana belonging to that other person for the mere purpose of taking a drag or puff therefrom and then returning said pipe via passing it on around the circle is guilty of unlawful "possession or control" of a narcotic drug.
In State v. Williams, 117 Or. 238, 243 P. 563 (1926), the Supreme Court of Oregon had before it a fact situation analogous to the one at bar. Mr. Justice Belt in speaking for the Supreme Court of Oregon in State v. Williams stated:
"Defendant was indicted for unlawfully having intoxicating liquor in his possession. The cause was submitted on the following stipulation:
"`That the state is able to prove by competent evidence upon the trial of the above-entitled action, and the defendant admits that on the 22d day of October, 1924, in the county of Tillamook and state of Oregon, the defendant then and there being, did then and there, at the invitation of a friend, the owner and possessor of a bottle of intoxicating liquor, received from this friend said bottle of liquor, for the sole purpose of taking a drink therefrom, and immediately after taking the drink therefrom the said defendant immediately returned the said bottle to the friend, who handed the same to him for the purpose of taking a drink, and that the only possession, ownership, or control exercised over said bottle of intoxicating liquor by the defendant was the possession as above stated, solely for the purpose of taking a drink of intoxicating liquor at the *315 invitation of said friend, and for no other purpose; that the said defendant was not the owner of said bottle of liquor, and had no interest therein other than as hereinbefore specified; that the evidence is undisputed that the defendant held the bottle of intoxicating liquor handed to him by his friend for the purpose of taking a drink in his hand only long enough for the purpose of taking such drink, which drink the defendant took.'
"On motion of the defendant, the court directed a verdict of acquittal, for the reason that the facts stipulated do not constitute the crime charged. The state, by virtue of section 2224  59, Or.L., appeals.
* * * * * *
"Defendant was indicted under section 2224-4, Or.L., which provides:
"`Except as hereinafter provided in this amendatory act, it shall be unlawful for any person to receive, import, possess, transport, deliver, manufacture, sell, give away or barter any intoxicating liquor within this state. * * *.'
"Does the mere taking of a drink of intoxicating liquor, at the invitation of a friend, constitute unlawful possession of the same within the meaning of the statute? This precise question was decided adversely to the contention of the state in State v. Jones, 194 P. 585, 114 Wash. 144, wherein the court said:
"`Moreover, since the state here stands upon a technical construction of the word "possession," we may say that possession, as the word is used in the statute, means something more than the mere taking in the hand for the purpose of immediately drinking the thing thus possessed upon the express invitation of the owner so to do. Appellant's counsel suggested the correct idea in his objection, and the court should at least have defined possession as including control of the thing possessed with the right to dispose of it in any manner the possessor saw fit. As we understand the laws of hospitality, when one is offered a glass of liquor, he has a right to accept and drink it or refuse it, and his possession, if he accepts it, is not broader than the invitation upon which he acts.'
"In State v. Munson, 111 Kan. 318, 206 P. 749, the court said:
"`In this instance, possession may not be attributed to the defendant, because an essential element of possession is lacking. The person having custody simply handed the liquor to the defendant, to take a drink. The liquor was accepted for that purpose only. The quantity appropriated, if any, was consumed by the act of appropriation, and the remainder, if any, was not held under any continuing claim to exclusive use.'
"In Brooks et al. v. Commonwealth, 206 Ky. 720, 268 S.W. 339, the court stated:
"`It has been announced in more than one opinion of this court that one who receives a bottle, and, after taking a drink therefrom, returns it to the person from whom it is received, cannot be declared guilty of having the unlawful possession of intoxicating liquor in the meaning of any provision of the prohibition enforcement law. For in such case the possession of the liquor is deemed to be in and continue with the person carrying and controlling it and offering the drink, and its momentary possession by another for the sole purpose of taking an offered drink is not a violation of the statute. Skidmore v. Commonwealth, 204 Ky. 451, 264 S.W. 1053; Sizemore v. Commonwealth, 202 Ky. 273, 259 S.W. 337.'
"The question at bar was answered in Brazeale v. State, 133 Miss. 171, 97 So. 525, from which we quote:
"`When arrested, the appellant was in the act of taking a drink of whisky from a bottle. According to his version *316 of the matter, the liquor was the property of another, who had just handed it to him, so that he might take a drink thereof. The court charged the jury, at the request of the state, to find the defendant guilty if they believed from the evidence beyond a reasonable doubt that he "did willfully and unlawfully take into his hands and thereby have in his possession a bottle containing intoxicating liquor, commonly called `white lightning whiskey,' for the purpose of taking a drink thereof." The question raised by this instruction, in the last analysis, is simply this: Is it a crime to take a drink of intoxicating liquor? The statute does not so provide, as could have been very easily done, had the Legislature so desired; its language being: "It shall be unlawful for any person * * * to have, control or possess" intoxicating liquor. * * The possession contemplated by the statute is of more substantial character than that which is for the purpose of and to the extent only that is necessary for taking a drink.'
"It is stated in Graham v. State, 150 Ga. 411, 104 S.E. 248:
"`The act of taking whisky from the hand of another is merely incident to the act of drinking the whisky, and can in no proper sense be held to be within the inhibition of a criminal statute which declares that it shall be unlawful "for any * * * person or individual * * * to have, control, or possess, in this state, any of said enumerated liquors or beverages."'
"The same conclusion was reached in People v. Ninehouse, 227 Mich. 480, 198 N.W. 973. In 33 C.J. 585, we find:
"`"To possess" means to have the actual control, care, and management of the liquor, and not a passing control, fleeting and shadowy in its nature.'"
The violation of the narcotics laws charged in the information in the instant case is Section 398.03, Fla. Stat. 1967, F.S.A. It reads:
"398.03 Narcotic Drugs Legal Only as Provided in This Chapter. 
It is unlawful for any person to manufacture, possess, have under his control, sell, prescribe, administer, dispense, or compound any narcotic drug, except as authorized in this chapter."
In view of the above Florida statute and the definitions of possession and control in the cases set forth above, we hold that taking a "drag" from another's pipe filled with illegal marijuana cannot be distinguished with reason and logic from taking a "drink" from another's bottle filled with illegal liquor, for both situations evince a mere "passing control, fleeting and shadowy in its nature."
It is noted that there is a split in the authorities as to what is sufficient to constitute possession; however, the majority of the jurisdictions follow the reasoning of the Williams case, supra, and we join the majority as we feel that they have based their decisions on the more valid reasoning. 48 C.J.S. Intoxicating Liquors § 222, p. 353.
It therefore follows that the evidence was insufficient in law to sustain a verdict of guilty against the defendant of the offense as charged in the information.
Reversed.
PIERCE and MANN, JJ., concur.