238 So.2d 75 (1970)
STATE of Florida, Petitioner,
v.
Arthur William ECKROTH, Respondent.
No. 39245.
Supreme Court of Florida.
July 8, 1970.
Earl Faircloth, Atty. Gen., and Michael N. Kavouklis, Asst. Atty. Gen., for petitioner.
Barry M. Salzman, Winter Haven, of Roney, Ulmer, Woodworth & Jacobs, St. Petersburg, for respondent.
BOYD, Justice.
This cause is before us on petition for writ of certiorari to review the decision of the District Court of Appeal, Second District, reported at 227 So.2d 313. Jurisdiction is based on conflict between the decision sought to be reviewed and the decision of this Court in Reynolds v. State.[1]
Respondent, Eckroth, hereinafter referred to as "defendant" was charged with unlawfully possessing and having in his control, a certain narcotic drug, to-wit: cannabis sativa, commonly known as marijuana. He was tried by a jury and found guilty of the charge. On appeal, the District Court reversed the conviction finding the evidence insufficient to show that defendant had possession or control of marijuana. The Court reviewed decisions from other states involving possession of illegal liquor and stated:[2]
"[W]e hold that taking a `drag' from another's pipe filled with illegal marijuana cannot be distinguished with reason and logic from taking a `drink' from another's bottle filled with illegal liquor, for both situations evince a mere `passing control, fleeting and shadowy in its nature'.
"It is noted that there is a split in the authorities as to what is sufficient to constitute possession; however, the majority of the jurisdictions follow the reasoning *76 of the Williams case, supra[3], and we join the majority as we feel that they have based there decisions on the more valid reasoning."
The facts in the instant case are that the defendant Eckroth accompanied by codefendants Homer and Marshall, entered the home of codefendant Belle Matthews between 1:30 A.M. and 2:00 A.M. on March 10, 1968; that codefendant Marshall, at the time the three men entered the house, had six clear plastic bags of marijuana with him, which he placed on a footlocker in the house; that the occupants in the house rolled and smoked cigarettes made from the marijuana Marshall brought with him; that defendant Eckroth and codefendants Marshall, Homer, Matthews and several others, sat in a circle and smoked a pipe belonging to Marshall and filled with marijuana. The pipe was passed around to those in the circle and defendant Eckroth smoked the pipe when it was passed to him.
In Reynolds v. State,[4] this Court stated:
"In offenses of this character, `possession' is usually defined as having personal charge of or exercising the right of ownership, management, or control over the liquor in question. * * * To constitute possession, there need not necessarily be an actual manucaption of the liquor, nor is it necessary that it be otherwise actually upon the person of the accused. * * * There must, however, be a conscious and substantial possession by the accused, as distinguished from a mere involuntary or superficial possession."
The possession and control of defendant Eckroth in the instant case meets the Reynolds test. In fact, the uncontradicted evidence establishes actual, physical possession and control of the drug.
Webster's Third New International Dictionary defines "possession" as "the act or condition of having in or taking into one's control or holding at one's disposal" and "smoke' as "to inhale and exhale the fumes of tobacco or something resembling tobacco from a pipe, cigar, or cigarette." Inhaling and exhaling requires both possession and control of the substance smoked, in this case, the narcotic, marijuana. In addition, when defendant Eckroth received the pipe containing marijuana and passed it on to the smoker, he was possessing and controlling both the pipe and the narcotic drug therein.
The District Court in its opinion relies on decisions from other states construing the "possession" language of the illegal liquor laws of the prohibition era. Of greater persuasive authority are the decisions of our own courts and the courts of other states construing the possession and control requirements of the Uniform Narcotic Drug Act.
The Uniform Narcotic Drug Act has been adopted in Florida and forty-five (45) other states, the District of Columbia and Puerto Rico.[5] Florida Statutes § 398.03, F.S.A., under which defendant stands convicted is identical to Section 2 of the Uniform Act[6] and provides:
"398.03 Narcotic drugs legal only as provided in this chapter.  It is unlawful for any person to manufacture, possess, have under his control, sell, prescribe, administer, dispense, or compound any narcotic drug, except as authorized in this chapter."
The terms "possess, have under his control" have been construed in numerous cases in states having the Uniform Act. In an earlier opinion the District Court of Appeal, Second District, in Spataro v. State,[7] *77 held that possession need not be exclusive but may be joint with one or more persons. In Spataro, the presence of marijuana cigarettes in a dresser in a room of a house shared by the codefendants was held sufficient to establish possession under the Act. The District Court stated:[8]
"The precise question which we must decide is whether or not such facts support the finding that the defendant unlawfully `possessed' a narcotic drug within the meaning of § 398.03, Fla. Stat., F.S.A. * * * At this date, the Florida courts have not been called upon to define the word `possess' as it is used in § 398.03, Fla. Stat., F.S.A. The Florida Supreme Court, however, construed the word `possession' in a case dealing with the unlawful possession of intoxicating liquor in Reynolds v. State * * *. The definition that the Supreme Court gave to the word `possession' in the Reynolds case is basically the same as that given by the state courts from other jurisdictions in interpreting the Uniform Narcotic Drug Act. The Reynolds case and the cases referred to in the annotation, supra, require the state to prove that the defendant had physical or constructive possession of the object or thing possessed, coupled with his knowledge of its presence." (e.s.)
It is clear that possession and control under the Act need not be exclusive nor of great durmation,[9] and that the quantity possessed is immaterial.[10] Cases from other states involving "pot parties" and common access to a narcotic hold possession sufficient even when based on circumstantial evidence.[11] The facts before us establish a stronger case based on actual possession. In State v. Jefferson,[12] the State's evidence was that a needle and syringe with its contents were seen in defendant's right hand. The Missouri Court held this sufficient under the Uniform Act stating:[13]
"The defendant in the instant case had the entire possession. It was actual possession and not constructive possession. The drug in his hand was under his control and was subject to his disposal in that the evidence tends to show that he was about to inject the drug into his body. We have no doubt that the sort of possession shown by the evidence was intended to be included in and prohibited by the statute."
In Peachie v. State,[14] the Maryland Court stated:
"The evidence that Peachie had a hypodermic needle in his hand and threw it away, along with a handkerchief containing fresh blood stains, and that he had fresh needle marks on his arm, would permit the inference that he had taken an injection of the drug just prior to the entry of the officers. This circumstantial evidence points clearly to the fact that he had administered the drug to himself. Of course, if that fact is assumed, it necessarily follows that he had possession and control of the instrument and its contents at the time of the injection, as well as an intent and purpose to administer the drug. The cases cited clearly recognize that the duration of the possession and the quantity possessed are not material. Nor is it necessary to prove ownership in the sense of title. *78 We think the State's evidence, if believed, was sufficient to support the verdict, * * *"
The interpretation of Florida Statutes § 398.03, F.S.A., urged by respondent herein and adopted by the District Court below, requires exclusive and extended possession or control of the narcotic. This is contrary to the great weight of authority from other jurisdictions having the Uniform Act. Further, such an interpretation would permit smoking marijuana from a pipe in conjunction with a group and would also permit a person to take heroin from a needle, if the same needle and drug were being used by others in a group. The result would be to undermine the purpose of the Act which is to prohibit or limit the use of drugs which are destructive to the user and detrimental to the public generally.
Accordingly, the decision of the District Court is reversed and the cause remanded with directions to reinstate the verdict and judgment of conviction.
It is so ordered.
ROBERTS, DREW and ADKINS, JJ., concur.
ERVIN, C.J., dissents with opinion.
ERVIN, Chief Justice (dissenting):
I do not believe that the defendant Eckroth is guilty of the crime of possessing and having in his control marijuana, since the evidence against him was only that he sat in a circle with others and smoked from a pipe belonging to one Marshall, who filled it with marijuana, lit it and passed it on to Eckroth, who took a puff. I think the District Court's reasoning set forth in the majority opinion and the cases it cites in support are sufficient to demonstrate there was no "possession" of marijuana by Eckroth in the substantial sense recognized and established in the law denouncing unlawful possession of prohibited things.
NOTES
[1] 92 Fla. 1038, 111 So. 285 (1927).
[2] 227 So.2d 313, 316 (Fla.App.2d 1969).
[3] State v. Williams, 117 Or. 238, 243 P. 563 (1926).
[4] Reynolds v. State, 92 Fla. 1038, 1041, 111 So. 285, 286 (1927).
[5] 91 A.L.R.2d 810, 811 (1963).
[6] 9B Uniform Laws Anno. 423 (1966).
[7] 179 So.2d 873 (Fla.App.2d 1965).
[8] Id. at 876.
[9] State v. Brown, 235 Md. 401, 201 A.2d 852 (1964) (the "moment" it took to hand envelope to another held sufficient); Sutton v. State, 170 Tex.Cr.R. 617, 343 S.W.2d 452 (1960) (25 seconds held sufficient).
[10] Schenher v. State, 38 Ala.App. 573, 90 So.2d 234; cert. denied 265 Ala. 700, 90 So.2d 238 (1956); Sutton v. State, 157 Tex.Cr.R. 216, 247 S.W.2d 894 (1952).
[11] Patterson v. State, 403 P.2d 515 (Okla. Crim. App. 1965); Peachie v. State, 203 Md. 239, 100 A.2d 1 (Md. App.Ct. 1953).
[12] 391 S.W.2d 885 (Mo. 1965).
[13] Id. at 889.
[14] 203 Md. 239, 100 A.2d 1, 2 (Md. App. Ct. 1953).