STATE of Missouri, Respondent,

v.

Brent Alan ERWIN, Appellant.

No. 56104.

Supreme Court of Missouri, Division No. 2.

Dec. 13, 1971.

John C. Danforth, Atty. Gen., G. Michael O'Neal, Asst. Atty. Gen., Jefferson City, for respondent.

James A. Dunn, Carthage, for appellant.

PRITCHARD, Commissioner.

Appellant was convicted by the verdict of a jury of the possession of marijuana which assessed his punishment at six months in the County Jail. The claims for reversal on this appeal are that the search of the kitchen and other rooms of the house where appellant was arrested was unreasonable and in violation of his constitutional rights, and any evidence obtained thereby was inadmissible under Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685; and that the evidence was insufficient to sustain the conviction because, as argued, the evidence merely showed that appellant took a pipe in his hand, put it to his mouth, and passed it on to another person. "There is no evidence that he even took a drag from the pipe when he had it to his mouth, or that there was, in fact, marijuana in the pipe when he put it to his mouth."

On the evening of March 14, 1969, Deputy Sheriff Charles Whitlow and four other officers received an informer's tip about a "marijuana narcotics party" which was going to be in progress. They decided to make a raid, and went to a first residence where they found there was no party going on. The officers proceeded to check another house which was not being used by a family and which was located ten miles north and east of Carthage in Jasper County, Missouri. This house was owned by a Dr. Gory. When they drove by the Gory house, about 11:30 P.M., Whitlow observed a "real bright blue light glowing and in flickering motion from the west window." There were five motor vehicles on the premises. The officers drove on north about a quarter of a mile and stopped in a low place in the road. Whitlow and Trooper Richardson then walked back through the snow and brush up to the farmhouse. As they approached, the music from the house was getting real loud, and when they were about 50 feet from the house they were able to observe, through an unobstructed kitchen window, what was going on inside. Whitlow saw a boy, one Gail Sharron, standing at the window smoking a small corncob pipe which had a piece of aluminum foil pulled down over the bowl, depressed in the center, with a rubber band tightly around it to hold the foil in place. Whitlow had previously seen this apparatus in the laboratory, had seen pictures of it in narcotics literature, and had read as to how they were made. After Sharron finished smoking the pipe for a short time he handed it to appellant standing next to him. Appellant smoked the pipe then passed it on to another boy. At the time Whitlow smelled a very sweet musty smell like molding hay. He went around to where Richardson was, at which time two boys and a girl came out of the house, walked within 6 feet of the officers, then got into a car and drove off. Realizing that the party was about to break up, Richardson went in the south door into the south vacant room then into the kitchen. Whitlow went in the east door which led onto a porch, then into a utility room, then into the kitchen. As Whitlow entered, Pat

Gory ran by him and Whitlow told him to halt, and told all that they were under arrest for investigation of narcotics violation. The boys were searched for weapons, and Richardson found on appellant one of the little pipes with tinfoil and a rubber band on it like he had observed them smoking. In the same room Richardson found two aluminum foils used to make a cover for the pipe bowls, and one foil had a rubber band wrapped around it. The boy who ran had thrown something behind a stove in the kitchen, and Richardson found this to be the pipe with its foil still very warm which he saw them smoking. Along with the pipe he found one of the aluminum foils, and the other foil was found on top of the kitchen cabinet. Later Whitlow took the corncob pipes (State's Exhibits 1 and 2) to the Missouri State Highway Patrol Laboratory at Jefferson City and gave them to Afton Ware, the laboratory chemist.

Trooper Richardson's testimony was substantially the same as that of Whitlow, except that he had previously smelled marijuana being burned, and the unusual odor he smelled inside was the distinct odor of marijuana. Richardson detected the same odor about the pipe.

Afton Ware made the laboratory tests of the two pipes and the foil. He found no microscopic particles of the marijuana plant. He did find "a resinous substance produced by the marijuana plant tetra hydra cannabinol—this was the active resin produced by marijuana which gives the mild hallucinogenic effect and it was present inside the bowl of the pipe, also in the aluminum foil." Ware was unable to say how long the resin had been in the pipes and foil.

Pat Gory was one of the boys in the house when appellant was arrested. He had been with appellant earlier in the day and discussed going to a party later that evening with marijuana. They met other boys and two girls and that evening they arrived at the farm and a fire was started. Bennett Wilson and Max Gipson or Gail Sharron had pipes into which was put a substance about the size of the end of one's finger. The substance was kind of dark, a kind of molasses, a little round ball, "then get a match and smoke it and light it." Pat smoked the pipe after which appellant also did so. It was hashish which was smoked, and either Max Gipson or Gail Sharron brought it to the party. Pat put some contents in the pipes, as did Max and Gail. The officers took one pipe from Max and found the other one under a couch. Appellant was the only one who had his hand on the pipe at the time he was smoking it. He probably could have thrown it on the floor or someplace. "[W]e usually just passed it around or gave it to anybody." Appellant had sole control of the pipe when he had it in his mouth, and Pat observed appellant smoking one of the pipes two or three times that evening.

For appellant, Max Gipson testified that one of the officers in searching him took one of the two pipes, and he did not know whether a pipe was taken from appellant. Max had brought one of the pipes to the party and Gail Sharron brought the other. There was no other pipe there to Max's knowledge. In rebuttal, Richardson denied that he found any pipe or apparatus on Max's person.

■ Under all the facts and circumstances, and assuming appellant had standing to object, the search of the farmhouse kitchen was not unreasonable so as to come within the prohibition of the Chimel case. The evidence is, that upon arrest of appellant and the other boys present they were lined up against the kitchen wall, personally searched, then a search of *that* room was conducted. There was no search conducted in any room but the kitchen. The items received in evidence were found in the kitchen where the evidence was either in plain view or found on appellant's person, and the officers had seen one of the

boys throw something behind furniture, so it was reasonable to move the furniture in an effort to discover the evidence. State v. Jefferson, Mo., 391 S.W.2d 885, 888.

■ As to the second point, the evidence does not show merely that "the Defendant took a pipe into his hand, put it to his mouth, and passed it on to another person" so as to make applicable the case of Eckroth v. State, Fla.App., 227 So.2d 313, 316. There the court did hold, in applying analogous whiskey drinking cases, that taking a "drag" from another's pipe filled with illegal marijuana was a mere " 'passing control, fleeting and shadowy in its nature,' " and that such was insufficient in law to sustain a verdict of guilty against the defendant. Here, the testimony of Officer Whitlow was that he took a pipe with tinfoil and a rubber band on it from the person of appellant when he searched him. Chemist Ware found these items to contain active resin produced by marijuana, the substances contained in §§ 195.010(5), 195.020, RSMo 1969, V.A.M.S. The facts and circumstances (State v. Worley, Mo., 375 S.W.2d 44) were not insufficient to sustain appellant's conviction. State v. Young, Mo., 427 S.W.2d 510; State v. Virdure, Mo., 371 S.W.2d 196; 25 Am.Jur.2d Drugs, Narcotics, and Poisons, § 21 p. 298; and Anno. 91 A.L.R.2d 810.

The judgment is affirmed.

BARRETT, C., not sitting.

STOCKARD, C., concurs.

PER CURIAM:

The foregoing opinion by PRITCHARD, C., is adopted as the opinion of the Court.

MORGAN, P. J., HENLEY, J., and FINCH, Alternate Judge, concur.

DONNELLY, J., concurs in result.